[No. 16248.  Department One.  June 10, 1921.]

TIMEWELL INVESTMENT COMPANY, *Appellant*, v.
ERNESTINE S. BECKWITH *et al.*,
*Respondents.*[1]

EVIDENCE (52)—COMPETENCY—RES GESTAE—ACTS ACCOMPANYING
TRANSACTION—BOOK ENTRIES. Where the issue in an action was as to
whether a person who purchased certain judgments against real
property was acting as the agent of the plaintiff or of the defendant,
book entries made at the time of purchasing the judgments were ad-
missible as a part of the res gestae in favor of the one making
them to show the capacity in which he acted, to corroborate testi-
mony as to the transaction, and to rebut inferences that might be
drawn or attempted to be drawn if the books were not produced.

PRINCIPAL AND AGENT (9)—EVIDENCE—WEIGHT AND SUFFICIENCY.
In an action to establish a trust arising from the procurement of
the assignment of a judgment by a person alleged to be acting as
agent for plaintiff, held that the burden of proof resting upon plain-
tiff to prove the agency was not sustained by a preponderance of
the evidence.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered July 31, 1920, dis-
missing an action to vacate certain execution sales of
real property.  Affirmed.

*Jesse Thomas,* for appellant.

*F. H. Murray* and *Burkey, O'Brien & Burkey,* for
respondents.

HOLCOMB, J.—By this appeal the appellant endeavors
to reverse a judgment of dismissal by the trial court
upon conflicting evidence.  The pleadings are volumin-
ous and not necessary to set forth here.  The object of
the action, as stated in the appellant's notice of *lis
pendens,* was to "establish a trust, or to vacate certain
execution sales of real property, or to compel the

[1]Reported in 198 Pac. 735.

assignment of the sheriff's certificate of sale of real property, and for general relief.'' The real property to be affected by the action is described as follows: lots 1 and 2, block 821; lots 11 and 12, block 1016; lots 11 and 12, block 1420, map of New Tacoma, Washington Territory.

Appellant admits that, although the decision of the lower court was, as it believes, based upon untenable ground, yet, the case being of equitable cognizance, its trial here is *de novo*, and the burden rests upon the appellant to show that it proved the agency by a preponderance of the evidence.

The burden also rested upon the appellant in the lower court to prove the agency by a preponderance of the evidence. The lower court saw and heard the witnesses and was much better able to judge of the credibility than are we.

The evidence on behalf of appellant was to the effect that, about the latter part of April, 1919, J. C. Heitman, president, general manager, and principal stockholder of the Fidelity Rent & Collection Company, went to W. R. Sturley, assistant treasurer and general manager of appellant, at his place of employment in the Bank of California, in Tacoma, and interviewed him in regard to lots 11 and 12, block 1016, map of New Tacoma, situated at South Eleventh street and Yakima avenue; that Heitman represented to him that appellant had lost certain other property in Tacoma by foreclosure, when Heitman could have sold its equity and saved something for it, had it been placed in Heitman's hands for sale, and that the 11th street and Yakima avenue property would go the same way unless steps were taken to realize on the equity before it was too late; that Sturley stated to him that there were two judgments which were liens against the property—one

held by Blanche B. Parker of Seattle for about ten thousand dollars, and one by the National Bank of Tacoma for a deficiency of more than fifteen hundred dollars. Sturley told Heitman that Mrs. Parker's attorney had intimated to him that Mrs. Parker would give him a release of her judgment for $200 cash; that it was then agreed between them that Heitman would see Mrs. Parker and ascertain what he could get a release or assignment of the Parker judgment for, and report back to Sturley, and Sturley would arrange with the National Bank of Tacoma for a release from the judgment held by that bank, and as soon as the lots were relieved from the judgment liens, Heitman would find a purchaser for them. Sturley testifies that Heitman first said he thought he could sell them for $12,000, and that he (Sturley) told him to "go to it"; that Heitman never reported back, and he supposed he had not been able to make any deal with Mrs. Parker, and that the matter had fallen through. On September 13, 1919, he learned that the 11th street and Yakima avenue property had been levied upon under an execution, and he approached Mr. Murray, the attorney for Mrs. Parker, and was told by Murray that he did not know anything about it, that he was not then handling the affairs of Mrs. Parker, and that he had better see Heitman. He then saw his own attorney and he and a Mr. Young went and called upon Heitman, and offered to reimburse him for the amount he had paid for the judgment, and his expenses, which Heitman refused. The assignment of the judgment from Mrs. Parker to Mrs. Beckwith is dated May 1, 1919, and was acknowledged before a notary public on that day. The property was sold on execution on the judgment assigned to Mrs. Beckwith on October 25, 1919, who purchased all three properties subject to the other existing prior encumbrances. On

November 24, 1919, this suit was commenced and the *lis pendens* filed in the auditor's office.

On the other hand, Heitman testifies that he was for some time authorized by Mrs. Beckwith, a woman of some means, residing in Rochester, New York, to invest some money for her in Tacoma property such as Heitman would recommend; that, prior to his calling upon Sturley, he had discovered the condition of the three parcels of property involved herein, and had an attorney investigate the judgment liens against them, who investigated and reported the same prior to April 17, 1919; that he then went to Sturley and offered one thousand to fifteen hundred dollars for a quitclaim deed "on behalf of a client of his", which Sturley refused. Heitman had also, prior to going to Sturley, inquired of Mr. Hellar, a representative of the National Bank of Tacoma, to learn for what price the bank would release or assign its deficiency judgment, but had not yet received the information from the bank, and after Heitman's interview with Sturley, Sturley was notified by Mr. Hellar the next day that Heitman had tried to buy the judgment and that the bank had declined. At about the same time—just prior to, or just after, his visit to Sturley—Heitman went to Seattle and interviewed Mrs. Parker relative to the purchase of her judgment. She asked $250, but within three or four days she went to Tacoma and visited Heitman, when he offered her $225 for an assignment of the judgment, which she accepted. This assignment was drawn up but the name of the purchaser left blank. Mrs. Parker, before executing the assignment, asked the name of the purchaser and was thereupon told that it was Ernestine S. Beckwith, and that name was written into the instrument. The money was paid to Mrs. Parker by check of

the Fidelity Rent & Collection Company, and the amount was immediately charged on the books of the Fidelity Rent & Collection Company to the respondent Beckwith, the entry being made in the books by the bookkeeper of the Fidelity Rent & Collection Company on the same day and in the regular course of business. All subsequent disbursements in connection with the levy and sale were likewise charged to the respondent Beckwith on the company's books as soon as the disbursements were made.

Respondent Beckwith's brother had expected to be in Tacoma in time for the sale, but did not arrive until early in December following, when he repaid the Fidelity Rent & Collection Company the money advanced in the purchase of the judgment and making the sale, amounting to $520.80. The notice of the levy and sale, showing respondent Beckwith as owner of the judgment, was published in the Tacoma Daily Index, a paper of very general circulation among banks and business houses in Tacoma. Heitman was the active manager of the Fidelity Rent & Collection Company, and had been for about sixteen years, and had never operated individually as a real estate broker.

Appellant first complains that the court erred in permitting the respondents to show that an account was opened upon the books of the Fidelity Rent & Collection Company between it and Ernestine S. Beckwith on May 1, 1919, charging the latter with the $225 paid for the assignment of the Parker judgment.

The closing of the negotiations with Mrs. Parker, the execution of the assignment, the payment of the purchase price, and the entry of that payment in the company's cash book and ledger, were all parts of the same transaction, and were all parts of the *res gestae*. The

claim of Sturley that Heitman was his agent in buying the judgment was denied by Heitman, who testified that he was not acting in his individual capacity, but only as manager of the Fidelity Rent & Collection Company, and that it was acting solely as the buying agent of respondent Beckwith. Book entries made by one party at the time of the transaction are competent evidence as a part of the *res gestae.* 11 Ency. Evidence 416. They are admissible in favor of the party making them as well as against such party. 10 R. C. L. 182. They are admissible also to rebut inferences that might be drawn or attempted to be drawn if the books were not produced, and to corroborate the testimony of the persons testifying to the transaction. 22 C. J. 892; and to show the capacity, whether as owner, trustee, agent, etc., in which the party acted. 10 R. C. L. 166.

The book entries were, therefore, properly admitted and were clearly competent, and tended to corroborate the testimony of Heitman that he individually did not attempt to act as agent; that the agent in the transaction was the Fidelity Rent & Collection Company, and that it was the agent of Ernestine S. Beckwith, at the time appellant alleged Heitman to be its agent. Heitman was also corroborated by the attorney employed to investigate the deficiency judgment and liens against the property, as being in April, 1919, prior to the 17th. Such evidence all tends to controvert the testimony of appellant to show that Heitman was the agent of appellant. The burden of proof being upon appellant to establish the agency by a fair preponderance of the evidence, we agree with the lower court that it failed to do so. We should be inclined to so hold had the trial court found otherwise. This being our view of the

evidence, the other errors assigned by appellant are immaterial.

The judgment is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and FULLERTON, JJ., concur.